Submitted March 14, 2019, affirmed April 7, 2021

CARRIE JENAY McCOIN,
aka Carrie Jenae Hale,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

Psychiatric Security Review Board
981580; A166229

484 P3d 1085

Petitioner appeals from an order of the Psychiatric Security Review Board (the board) rejecting her request for discharge and continuing her commitment to the Oregon Health Authority pursuant to an order issued in 2004 placing her within the board's jurisdiction for a maximum period of 20 years. Petitioner raises two assignments of error. In her first assignment, petitioner argues that the board erred in finding that she suffers from a mental disease or defect. In her second assignment, petitioner argues alternatively that, even if she has a mental disease or defect, the board erred in finding that she presents a substantial danger to others. *Held*: The Court of Appeals concluded that there was substantial evidence to support the board's findings that petitioner continues to suffer from a mental disease or defect and that she presents a substantial danger to others.

Affirmed.

Harris S. Matarazzo filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and Aoyagi, Judge, and Barron, Senior Judge.

BARRON, S. J.

Affirmed.

**BARRON, S. J.**

Petitioner seeks judicial review from an order of the Psychiatric Security Review Board (the board) rejecting her request for discharge and continuing her commitment to the Oregon Health Authority pursuant to an order issued in 2004 placing her within the board's jurisdiction for a maximum period of 20 years. Petitioner raises two assignments of error. In her first assignment, petitioner argues that the board erred in finding that she suffers from a mental disease or defect. In her second assignment, petitioner argues alternatively that, even if she has a mental disease or defect, the board erred in finding that she presents a substantial danger to others. We conclude that there is substantial evidence in support of the board's findings that petitioner continues to suffer from a mental disease or defect and that she presents a substantial danger to others, and we therefore affirm.

We review the board's findings to determine whether they are supported by substantial evidence, *i.e.*, for whether a reasonable person, viewing the record as a whole, could make the findings. ORS 183.482(8)(c). In doing so, we do not make our own findings or reweigh the evidence; rather, we ascertain, viewing the record in its entirety, whether the board could reasonably make the findings that it did. *Knotts v. PSRB*, 250 Or App 448, 454-55, 280 P3d 1030 (2012). We review the board's legal conclusions for errors of law and to determine whether they logically flow from the board's factual findings. *Id*. "If the board's reasoning cannot be ascertained or is faulty, then the order is not supported by substantial reason." *Id*. at 455 (internal quotation marks omitted).

The underlying relevant facts are undisputed. In February 1998, petitioner was found guilty except for insanity of unauthorized use of a vehicle, ORS 164.135; felony driving while revoked, ORS 811.182; and theft in the third degree, ORS 164.043, and placed under the board's jurisdiction for five years. Subsequent to her commitment, petitioner was conditionally released and readmitted to the Oregon State Hospital (OSH) on multiple occasions after experiencing relapses of her mental illness.

After the board's jurisdiction expired in January 2003, petitioner was discharged from OSH. In May 2003, petitioner reoffended and subsequently pleaded guilty except for insanity to two counts of assault in the second degree, ORS 163.175, and one count of burglary in the first degree, ORS 164.225. The trial court sentenced her to a maximum of 20 years under the board's jurisdiction, and OSH read-mitted her in July 2004.

After her readmission to OSH in 2004, petitioner was conditionally released in 2007, 2010, and 2013, and read-mitted each time after a relapse. Petitioner seeks review of the board's most recent order rejecting her request for discharge pursuant to ORS 161.341(3), which provides, in part:

"Any person who has been committed to a state hospital *** for custody, care and treatment under ORS 161.315 to 161.351 *** may apply to the board for an order of discharge or conditional release upon the grounds:

"(a)  That the person is no longer affected by a qualifying mental disorder;[1]

"(b)  That the person, if so affected, no longer presents a substantial danger to others; or

"(c)  That the person continues to be affected by a qualifying mental disorder and would continue to be a danger to others without treatment, but that the person can be adequately controlled and given proper care and treatment if placed on conditional release."[2]

At the hearing before the board, petitioner had the burden to prove by a preponderance of the evidence that she qualifies for discharge or conditional release. ORS 161.341(4).[3] We address first the record with regard to

___

[1] There is no dispute that petitioner's diagnosed Bipolar I disorder is a qualifying mental disorder.

[2] Petitioner requested, in the alternative, at her hearing that she be granted a conditional release. She does not seek review of the board's denial of her request for a conditional release.

[3] ORS 161.341(4) provides:

"When application [for discharge or conditional release] is made under subsection (3) of this section, the board shall require that a report from the superintendent of the hospital *** be prepared and transmitted as provided in subsection (1) of this section. The applicant must prove by a preponderance of the evidence the applicant's fitness for discharge or conditional release

petitioner's first assignment, in which she contends that she no longer suffers from a mental disease.

Petitioner called as a witness Dr. Hamilton, a psychiatrist. Hamilton discussed petitioner's diagnosis of Bipolar I in the following exchange with petitioner's counsel:

"Q  Is she taking or being prescribed any medication for a mental disease or defect?

"A  No.

"Q  And when if ever did she last take any such medication?

"A  She last took medication I want to say was September of 2016.

"Q  Okay. And what is her current diagnosis?

"A  *It is still listed as Bipolar 1.* She has a personality disorder, methamphetamine use disorder that's been severe but is in sustained remission given her hospitalization. She has a history of alcohol use disorder as well as marijuana use disorder.

"Q  How did you arrive at the conclusion that she has a Bipolar 1 disorder?

"A  Well, she came to me with that diagnosis. I have subsequently in preparation for this hearing I reviewed all seventeen volumes of her chart. And as of right now my opinion as to her diagnosis of bipolar is somewhat up in the air.

"Q  Okay. So you're unable to say whether or not at this time that she has a—has a bipolar disorder?

"A  Conclusively. That's correct.

"Q  What was the purpose of the medication my client had been prescribed until early September 2016?

"A  It was for mood stabilization.

"Q  Okay. And since that time has she experienced any relapse of her—of a bipolar disorder?

---

under the standards of subsection (3) of this section, unless more than two years has passed since the state had the burden of proof on that issue ***."

It has been less than two years since the state had the burden of proof.

"A    No.

"Q    In your opinion is that clinically significant?

"A    A year is a decent amount of time, but I wouldn't say that it is a long enough time to conclusively come to the decision that she does not have a bipolar disorder.

"Q    Okay. But my question is is it clinically significant that she's been without medication for a year and has not been symptomatic?

"*****

"A    So I would say no, it's not clinically significant.

"Q    So the absence of medication for a year to treat a bipolar disorder in terms of arriving at a diagnostic conclusion that's something you wouldn't consider arriving at a diagnostic conclusion?

"A    Not after a year, no.

"*****

"Q    An individual with a bipolar disorder off medication for ye[ar]—can individuals with a bipolar disorder not receiving medication experience a relapse in less than a year?

"A    Of course.

"*****

"Q    Okay. So you would agree that a year's a pretty good—good period of time to be symptom free without medication?

"A    It's a good amount of time but not conclusive of taking away that diagnosis."

(Emphasis added.) Hamilton also described petitioner's long history of a bipolar disorder, including petitioner's acknowledgment of having had factors in her life, such as child abuse, that can lead to a bipolar disorder, and having bipolar symptoms when she was not using substances. Hamilton opined that it would be two years before she could say that petitioner's bipolar disorder was no longer present.

In concluding that petitioner continues to suffer from bipolar disorder, the board relied on Hamilton's opinion

and cited other reports, including Exhibit 315, a report by a treatment provider who had been asked to determine if petitioner was eligible for conditional release. In opining that petitioner should not be conditionally released, the report noted petitioner's risk factors:

"• Major mental illness, chronic and treatment resistance

"• Not currently prescribed psychiatric medications

"• History of medication non-compliance

"• Comorbid substance use history, namely methamphetamine and marijuana

"• History of tense relationships with treatment providers

"• History of absconding from conditional release

"• Denial of mental illness, instant offenses, and substance abuse issues

"• Relationships with those using substances."[4]

In her first assignment of error, petitioner contends that the evidence presented at the hearing does not support the board's findings and its conclusion that she continues to have a mental disease or defect. The state contends that there is substantial evidence to support the board's findings. We agree with the state that the evidence is sufficient. We note once again that our job is to determine if there is substantial evidence to support the board's findings and if the board's conclusion logically follows from those findings. *Knotts*, 250 Or App at 454-55. It is possible that some of the evidence in the record could be interpreted to support petitioner's view that her bipolar disorder has resolved. But the board was not required to accept petitioner's interpretation

---

[4] Petitioner complains that the board's order merely recites exhibit numbers without identifying page numbers and without stating its reasoning in relation to the exhibits. Petitioner argues that this practice requires her and the court to comb through the exhibits to find the basis for the board's decision and, as such, hinders meaningful review. She cites no prejudice to her in this case and does not raise it as error, but petitioner's complaint is well-founded. It would be easier to ascertain the board's reasoning if the board cited the page numbers of the exhibits on which it relies, as it did regarding Hamilton's testimony in its order finding that petitioner did suffer from a mental disease or defect.

of the evidence. *See Einstein v. PSRB*, 330 Or 121, 131, 998 P2d 654 (2000) (Van Hoomissen, J., concurring) ("[The board] is entitled to find that petitioner's evidence is unpersuasive. If [the board] was not persuaded that petitioner in this case had sustained his burden of proof, then it was entitled to deny his application for discharge on that ground alone ∗∗∗."). We conclude that there is substantial evidence to support the board's findings, and that its conclusion that petitioner suffers from a mental disease or defect logically follows from those findings.

ORS 161.341(3)(b) provides that a person may be discharged from the board's jurisdiction even if the person has a mental disease or defect, if that person "no longer presents a substantial danger to others." ORS 161.351(2) provides, in part:

> "A person whose qualifying mental disorder may, with reasonable medical probability, occasionally become active and when it becomes active will render the person a danger to others may not be discharged."

In her second assignment of error, petitioner contends that the board erred in determining that she may not be discharged because she is a substantial danger to others. As with her first assignment of error, petitioner had the burden of proving by a preponderance of the evidence that she is not a substantial danger to others even if she does have a mental disease of defect.

In finding that petitioner presents a substantial danger to others, the board again relied on the testimony of Hamilton:

> "Q   When she is experiencing symptoms of mania or psychosis is she a substantial danger to others?
>
> "A   I would say yes."[5]

---

[5] Although Hamilton did not state her opinion in terms of medical probability as provided for in ORS 161.151(2), "magic words" are not required as long as the expert's opinion establishes that it is based on probability. *Hudjohn v. S&G Machinery Co.*, 200 Or App 340, 352-53, 114 P3d 1141 (2005) (internal quotation marks omitted). In considering the record as a whole, Hamilton's opinion meets the standard established by ORS 161.151(2).

At the time of the hearing, Hamilton had reviewed the 17 volumes of petitioner's chart and knew that petitioner's crimes of convictions involved refusing to leave an elderly man's home upon his request and then attacking him with a piece of wood and a piece of a lamp which was metal. Hamilton also knew that on one of petitioner's conditional leaves she had threatened to beat a fellow resident with a baseball bat. That evidence is "probative as to a person's present mental condition." *Rolfe v. Psychiatric Security Review Board*, 53 Or App 941, 947, 633 P2d 846, *rev den*, 292 Or 334 (1981).

In a report written previously, Hamilton wrote, "[I]t is my medical opinion, that [petitioner] has a mental disease or defect, which when active, makes her a substantial danger to others." An OSH psychiatrist shared Hamilton's opinion. The record supports the board's findings and conclusion that petitioner is a substantial danger to others when her mental disease or defect is active. The board therefore did not err in rejecting petitioner's request for discharge.

Affirmed.